**David NARANJO, Jr., Plaintiff,**

v.

**ALVERNO COLLEGE et al., Defendants.**

No. 79–C–664.

United States District Court,
E. D. Wisconsin.

April 16, 1980.

Calarco, Felger & Steele, Milwaukee, Wis., for plaintiff by Clifford R. Steele, Milwaukee, Wis., of counsel.

Quarles & Brady by Patricia A. Pacenta, David E. Jarvis, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This matter is before me on the defendants' motion for summary judgment. For reasons which follow, the motion will be granted.

### I. FACTS

The following facts have been established either by admissions in the pleadings or by uncontradicted affidavits submitted with regard to the instant motion. The plaintiff, David Naranjo, Jr., is a resident of Milwau-

kee, Wisconsin. The defendants include Alverno College, its president, academic dean, director of admissions and the chairman of the nursing department at Alverno.

Alverno College is a private, four-year liberal arts college. There were 1,340 undergraduates enrolled at Alverno for the first semester of the 1979–80 academic year. The "Weekend College" is a program of courses offered for students who can attend classes only on weekends. The Weekend College offers a bachelor of arts in management and in communications, an associate of arts degree in liberal arts, and a bachelor of science in nursing.

The Weekend College is part of the undergraduate curriculum of Alverno College. Applicants to the Weekend College must apply and be admitted to Alverno College in accordance with the general admissions policies applicable to all undergraduate candidates. One of the general admissions policies of Alverno College is to admit only women to its degree granting programs.

On November 30, 1978, the Alverno admissions office received Mr. Naranjo's application for enrollment in the nursing program offered as part of the Weekend College. By letter dated December 12, 1978, the college informed the plaintiff that it did not admit men as candidates to its degree granting programs.

Alverno College is a non-profit Wisconsin corporation. The college has been granted property tax exemption by the city of Milwaukee and sales and income tax exemptions by the state of Wisconsin. In 1978–79, Alverno students received state of Wisconsin tuition grants in the amount of $245,000. Alverno students also receive aid from the state of Wisconsin in the form of talent incentive grants, state Indian grants, and student loans. Finally, the college also has ties to the state of Wisconsin by leasing space in one of its buildings to the Department of Natural Resources. The state pays $112.00 per month for this space which is used for an air pollution monitoring station. The aggregate annual operating income of the college is approximately $5.5 million.

The plaintiff filed the instant action on August 21, 1979, alleging two causes of action and seeking injunctive, declaratory, and monetary relief. In his first cause of action, brought under 42 U.S.C. § 1983, the plaintiff claims that the defendants' refusal to admit him to the college constituted a state action which deprived him of his Fourteenth Amendment rights. The plaintiff's second cause of action alleges that the defendants' action violated the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by Title IX of the Education Amendments of 1972.

## II. CAUSE OF ACTION UNDER § 1983

The defendants have moved for dismissal of the plaintiff's cause of action under § 1983 contending that their actions in this case do not constitute the state action that is necessary for jurisdiction under that statute. The court of appeals for this circuit has explicitly laid out the legal standards to be used in deciding whether a private university's actions can be construed as state action. *See, Musso v. Suriano*, 586 F.2d 59 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1978); *Cannon v. University of Chicago*, 559 F.2d 1063 (7th Cir. 1976), rev'd on other grounds, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975). See also, *Doe v. Bellin Memorial Hospital*, 479 F.2d 756 (7th Cir. 1973).

These cases have clearly established that allegations of governmental funding and general regulation cannot support a finding of state action unless such ties to the state directly encourage the challenged activity. There is no indication in the record that the state by its granting of tax exemptions or through its financial aid to Alverno students has affirmatively supported the college's policy of admitting females only.

In an attempt to distinguish the instant case from *Musso* and its predecessors, the plaintiff argues that the granting of tax exemptions by the state creates state action

on the part of the private entity to which the exemption is granted. I do not believe that there is any significant distinction between direct financial assistance to an institution and the granting of a tax exemption that results in financial benefit which would justify distinguishing the instant case from *Musso, Cannon* or *Cohen.* Moreover, the court of appeals for this circuit has held that the granting of tax exemptions does not create state action on the part of a private entity. *Chicago Joint Board v. Chicago Tribune,* 435 F.2d 470 (7th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1662, 29 L.Ed.2d 138 (1971); *Bright v. Isenbarger,* 314 F.Supp. 1382 (N.D.Ind. 1970), aff'd, 445 F.2d 412 (7th Cir. 1971).

Despite the impressive array of precedent contrary to his position, the plaintiff argues that *Pitts v. Department of Revenue for State of Wisconsin,* 333 F.Supp. 662 (E.D. Wis.1971) (3 judge panel), supports his position regarding the effect of tax exemptions. As the court *Pitts* noted, however, that case did not involve a challenge to state supported private action, but rather involved a challenge to the state support itself. *Id.* at 665. *See also Cannon v. University of Chicago,* 559 F.2d at 1071 n. 8.

Finally, the plaintiff also relies on Alverno's leasing of space to the state Department of Natural Resources in support of its claim of state action. Again, since there is no allegation that this lease has any tie to the college's admissions policy, the lease is not a sufficient nexus to the state to create state action. "[N]exus can be avoided only by an allegation of facts suggesting that the ostensibly private entity has acted as a state instrumentality or a 'joint participant,' in the language of *Burton v. Wilmington Park Authority* [365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)]. Such an allegation is dependent upon more than funding; it is dependent upon facts suggesting control." *Musso v. Suriano,* 586 F.2d at 63.

Since there are no facts before me suggesting that Alverno's financial support from the state of Wisconsin and its other ties to the state led either to the state's involvement in Alverno's admissions policy or to the state's de facto control of the college, the plaintiff's cause of action under § 1983 must be dismissed for lack of subject matter jurisdiction.

## III. CAUSE OF ACTION UNDER TITLE IX

■ Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), provides in part:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

"(1) In regard to admissions to educational institutions, this section shall apply only to institutions of vocational education, professional education, and graduate higher education, and to public institutions of undergraduate higher education; . . ."

By its express terms, it is apparent that the proscription of § 1681(a) does not apply with regard to admissions to *private* institutions of undergraduate higher education. The undisputed record before me indicates that Alverno is the latter type of institution. Nonetheless, the plaintiff contends that § 1681(a) may apply to Alverno's admissions to its nursing program since such program allows Alverno to be characterized as an "institution of professional education."

While the plaintiff's reading of the statute is not totally unreasonable, it is contrary to regulations promulgated by the Department of Health, Education and Welfare (HEW). 20 U.S.C. § 1682 authorizes HEW "to effectuate the provisions of section 1681 of this title . . . by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." Pursuant to this statutory authorization HEW promulgated regulations including 45 C.F.R. § 86.2(n) which defines "institution

**638**

of professional education" in the following manner:

" . . . an institution (*except any institution of undergraduate higher education* ) which offers a program of academic study that leads to a first professional degree in a field for which there is a national specialized accrediting agency recognized by the United States Commissioner of Education." (emphasis added).

It is clear from this definition that Alverno, as an "institution of undergraduate higher education" is not an institution of professional education for the purpose of Title IX, despite the fact that it offers courses in professional areas.

■ In attempting to avoid this conclusion, the plaintiff contends that there are issues of factual dispute with regard to Title IX's applicability in this case. I disagree. It is undisputed that Alverno is an undergraduate institution of higher education which offers professional training in nursing, and that admission to the nursing program is not independent of the general undergraduate admissions program of Alverno College. Regulations issued pursuant to a specific statutory authorization, if consistent with that authorization, have the force of law. *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 976 (5th Cir. 1977), cert. denied, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). In the instant case, the previously cited HEW regulation is dispositive of the plaintiff's claim under Title IX.

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed.